IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT FENNELL, | No. 4:22-CV-00880 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| JOHN E. WETZEL, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

FEBRUARY 14, 2023

Plaintiff Robert Fennell is currently confined at the State Correctional Institution in Camp Hill, Pennsylvania (SCI Camp Hill). He filed the instant *pro se* Section 1983[1] action claiming that officials at a different correctional facility violated his constitutional rights, primarily with regard to COVID-19 vaccination. Presently pending are Defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). The Court will grant Defendants' motions.

I.      BACKGROUND

Fennell initially filed suit in September 2021, asserting constitutional torts that allegedly occurred at both SCI Mahanoy and SCI Smithfield and which were

---

[1]    42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

purportedly committed by different prison officials at the respective facilities.[2] Those claims and defendants, however, were completely unrelated and thus were inappropriately combined in a single complaint in violation of Federal Rule of Civil Procedure 20(a)(2).[3] Fennell conceded as much, and the Court accordingly severed the two cases.[4] Case number 4:21-cv-01717 was reserved for Fennell's claims against prison officials at SCI Smithfield;[5] the instant case—number 4:22-cv-00880—was opened for Fennell's claims against prison officials at SCI Mahanoy.[6]

Fennell's complaint in this case primarily concerns events at SCI Mahanoy from May through September 2021 regarding COVID-19 vaccination.[7] He also includes unrelated allegations concerning law-library access in early 2022.[8]

Fennell alleges that, after being transferred to SCI Mahanoy, he specifically requested either the Pfizer or Moderna COVID-19 vaccine and not the "Johnson & Johnson" (J&J) vaccine.[9] Fennell avers that the Corrections Health Care Administrator told Fennell that he would neither "authorize nor approve the use of the J&J vaccine on" Fennell and that he would be recalled to the medical

---

[2]   *See generally Fennell v. Luther*, No. 4:21-cv-01717, Doc. 1 (M.D. Pa. Oct. 7, 2021).
[3]   *See id.*, Doc. 45 at 2 ¶ 1(a).
[4]   *See id.* at 2 ¶¶ 1(a), 2.
[5]   *See id.* at 2 ¶ 2(a).
[6]   *See id.* at 2 ¶¶ 2(b), 4; *see also* Doc. 1 (case number 4:22-cv-00880).
[7]   *See* Doc. 1 ¶¶ 13-38.
[8]   *Id.* ¶¶ 39-46.
[9]   Doc. 1 ¶¶ 13-14.

department when the Pfizer or Moderna vaccine was available.[10]

Fennell asserts that defendant John E. Wetzel, former Secretary of the Pennsylvania Department of Corrections (DOC), "issued an order" to defendant Superintendent Bernadette Mason requiring her to "force" all SCI Mahanoy prisoners to "take the J&J vaccine" or face "misconducts" or "what[]ever restrictions are deemed necessary in order to have [inmates] comply."[11]  Fennell further claims that, in response to "Wetzel's commands," Mason ordered correctional officers to "force all prisoner's [sic]" to take the J&J vaccine and, if they refused, to transfer them "to FB Unit for the COVID-19 infected prisoners."[12]  According to Fennell, if prisoners who declined the J&J vaccine refused to be transferred to FB Unit, they were to be placed in the Restricted Housing Unit (RHU) and issued misconducts for refusing to obey an order and being present in an unauthorized area.[13]

Fennell alleges that on August 5, 2021, over 15 correctional officers gathered on C Unit to implement Mason's directive.[14]  He claims that officers went from cell to cell informing inmates that they had a choice between taking the J&J vaccine or being moved to FB Unit "with the COVID-19 infected" prisoners (and

---

[10]  *Id.* ¶ 15.
[11]  *Id.* ¶ 16.
[12]  *Id.* ¶ 17.
[13]  *Id.*
[14]  *Id.* ¶ 18.

losing privileges involving person-to-person contact like in-person visitation, yard, dayroom, use of the prison law library, *etc.*) and, if they refused the transfer, they would be sent to the RHU.[15]  Fennell asserts that he was presented with this choice but requested to "speak with medical" before making his decision.[16]

Fennell recalls that he was taken to a "vaccination room" where defendants Dr. Pinky Saikia[17] and nurse Angela Landmesser were present along with two other unidentified nurses.[18]  Fennell claims that he told Dr. Saikia that he did not want the J&J vaccine and preferred to receive the Pfizer or Moderna version.[19]  He maintains that "[d]ue to the number of staff in [his] face" and the threats of "punishment," he became "so scared" that he "complied . . . and submitted" to taking the J&J vaccine "against [his] will."[20]  Fennell alleges that, as Landmesser started to insert the J&J vaccine into his left shoulder, he yelled out, "Wait, wait, wait, wait, wait, I do not want the J&J because it mite [sic] kill me."[21]  Fennell further claims that Dr. Saikia advised him that if he were moved to the quarantine unit (FB Unit) and came into contact with a COVID-19-positive inmate, he could become infected and—with Fennell's preexisting conditions of high blood

---

[15]  *Id.* ¶¶ 19-20, 24.
[16]  *Id.* ¶¶ 21-23.
[17]  Fennell refers to this defendant as "Dr. Bora," but defense counsel identifies the defendant's correct name as "Dr. Pinky Saikia."  *See* Doc. 7 at 1.
[18]  Doc. 1 ¶¶ 23-24.
[19]  *Id.* ¶ 25.
[20]  *Id.* ¶ 26.
[21]  *Id.* ¶ 27.

pressure, asthma, and diabetes—he might die from COVID-19.[22] Fennell's complaint at this point is unclear, but it appears that he eventually acquiesced and received the J&J vaccine.[23]

Fennell claims that, after receiving the J&J vaccine, he experienced severe back pain, repeated headaches, numbness in his extremities, abdominal pain, recurrent diarrhea, and toe pain.[24] He avers that he filed several sick call slips requesting medical treatment for these symptoms, and on September 16, 2021, he was sent to medical for his symptoms.[25] He alleges that he was placed in the RHU even though he had not committed any misconducts and, when he asked Mason why he was in the RHU, she explained to him it was because he had filed a sick call slip indicating that he was experiencing side effects from the J&J vaccine.[26] He further alleges that Mason told him that he would "remain in the RHU without just cause until [he] reject[ed] any claims of having side effects from the J&J vaccine."[27]

Fennell also contends that, while he was in the RHU for five days, he was subjected to harsh conditions.[28] He claims that his light was left on from 4:00 p.m.

---

[22] Id. ¶ 28.
[23] See id. ¶ 29 (stating that, the following day, he filed a grievance about being "forced to take the J&J vaccine").
[24] Id. ¶ 30.
[25] Id. ¶¶ 31-33.
[26] Id. ¶¶ 35-36.
[27] Id. ¶ 36.
[28] Id. ¶¶ 37-38.

until 6:00 a.m.; that unidentified correctional officers conducting rounds would kick his door "every 30 to 45 minutes every day all night long," causing him to be unable to sleep; that the air conditioning was turned on in his cell (even though it was winter); and that he was denied hot water, commissary, showers, medical treatment, visitation, and mail privileges during this time.[29]

In unrelated allegations, Fennell contends that in March and April 2022, "he was repeatedly denied access to the law library" by Mason.[30] He additionally asserts that Mason had defendant librarian Jerilynne Stewart "submit a false Declar[a]tion claiming that" he had access to the law library.[31]

Fennell names eight defendants: Wetzel, Mason, Dr. Saikia, Landmesser, Stewart, correctional officer Charles Stetler, correctional deputy Lori White, and correctional officer Michael J. Dunkle.[32] He claims that his First and Eighth Amendment rights were violated by being forced to receive the J&J vaccine, and he additionally asserts a civil rights conspiracy claim.[33] He also raises state-law negligence and medical malpractice claims.[34] Defendants move to dismiss Fennell's complaint under Federal Rule of Civil Procedure 12(b)(6).[35] Defendants' motions are fully briefed and ripe for disposition.

---

29  *Id.*
30  *Id.* ¶¶ 41, 44, 46.
31  *Id.* ¶ 43.
32  *See id.* ¶¶ 2-9.
33  *Id.* ¶¶ 60-73.
34  *Id.* ¶¶ 74-79.
35  *See generally* Docs. 5, 17, 28.

## II. STANDARD OF REVIEW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[36] The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[37] In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[38]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[39] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[40] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[41] Finally, the court must review the presumed-truthful allegations

---

[36] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[37] *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).
[38] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).
[39] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
[40] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
[41] *Id.* (quoting *Iqbal*, 556 U.S. at 679).

"and then determine whether they plausibly give rise to an entitlement to relief."[42] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[43]

Because Fennell proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[44] This is particularly true when the *pro se* litigant, like Fennell, is incarcerated.[45]

## III. DISCUSSION

Before addressing Defendants' Rule 12 arguments, the Court must identify Fennell's claimed constitutional violations.[46] The gravamen of Fennell's complaint is that Defendants violated his rights by "forcing" him to receive a vaccine against his will. Although Fennell cites the First and Eighth Amendments as the source of rights regarding this claim, this type of allegation plainly implicates the substantive due process clause of the Fourteenth Amendment.[47] He

---

[42] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[43] *Iqbal*, 556 U.S. at 681.
[44] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).
[45] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).
[46] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("The first step in any [Section 1983] claim is to identify the specific constitutional right allegedly infringed."); *Graham v. Connor*, 490 U.S. 386, 394 (1989) (explaining that analysis of a Section 1983 claim requires "identifying the specific constitutional right allegedly infringed by the challenged" conduct).
[47] *See White v. Napoleon*, 897 F.2d 103, 111 (3d Cir. 1990) ("The Due Process clause of the Fourteenth Amendment substantively protects certain fundamental rights. Among these are the right to be free from unjustified intrusions into the body . . . [and] the related right to refuse unwanted medical treatment . . . ." (citing, respectively, *Ingraham v. Wright*, 430 U.S. 651, 673 (1977); *Rennie v. Klein*, 653 F.2d 836, 844 (3d Cir. 1981))).

also contends that numerous Defendants violated his Eighth Amendment rights by failing "to protect" him and by failing "to intervene" when his constitutional rights were allegedly being violated.  In addition, Fennell cursorily claims that Defendants conspired to violate his constitutional rights.  Finally, although not included in the section of his complaint where he sets forth his "counts" or causes of action, Fennell appears to be asserting a First and Fourteenth Amendment access-to-courts claim regarding denial of access to the prison law library.

Fennell's federal claims are riddled with fatal deficiencies.  The Court will discuss these deficiencies in turn.

### A. Personal Involvement

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*."[48]  Rather, a Section 1983 plaintiff must aver facts that demonstrate "the defendants' personal involvement in the alleged misconduct."[49]  Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through allegations of "personal direction" or of "actual knowledge and acquiescence"; however, such averments must be made with particularity.[50]

---

[48] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also Ashcroft v. Iqbal*, 556. U.S. 662, 676 (2009) (affirming same principle in *Bivens* context).
[49] *Dooley*, 957 F.3d at 374 (citing *Rode*, 845 F.2d at 1207).
[50] *Id.* (quoting *Rode*, 845 F.2d at 1207).

Fennell's complaint contains no allegations whatsoever against defendant Stetler.  In fact, Stetler's name only appears in the defendant-identification section and in the headings of Counts I through VI.  So Stetler must be dismissed from this action.

      **B.**      **Fourteenth Amendment Substantive Due Process**

The gravamen of Fennell's complaint is that he was allegedly forced to take the J&J COVID-19 vaccine against his will.  Fennell's allegations, however, do not—and cannot—establish a substantive due process violation.

"The Due Process clause of the Fourteenth Amendment substantively protects certain fundamental rights.  Among these are the right to be free from unjustified intrusions into the body . . . [and] the related right to refuse unwanted medical treatment . . . ."[51]  In a substantive due process challenge to governmental conduct, "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."[52]  Whether governmental action shocks the conscience is "a matter of law for the courts to decide."[53]

---

[51] *See White v. Napoleon*, 897 F.2d 103, 111 (3d Cir. 1990) (citing, respectively, *Ingraham v. Wright*, 430 U.S. 651, 673 (1977); *Rennie v. Klein*, 653 F.2d 836, 844 (3d Cir. 1981)).
[52] *Benn v. Univ. Health Sys., Inc.*, 371 F.3d 165, 174 (3d Cir. 2004) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).
[53] *Id.* (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952)).

In the instant case, Fennell alleges that he was "forced" to receive the J&J COVID-19 vaccine by way of Wetzel's and Mason's directives. According to Fennell, the prison's policy was that inmates were permitted to choose whether to receive the J&J vaccine or whether to be moved to a different housing unit with other unvaccinated inmates and subjected to the loss of certain privileges. If a prisoner refused both the vaccine and the transfer, he would be issued a misconduct and sent to the RHU. In other words, Fennell maintains that he was coerced into getting the J&J vaccine by facing the unpleasant alternative of being transferred to a different unit that housed unvaccinated and infected prisoners and losing certain privileges involving person-to-person contact (like in-person visits, yard, dayroom, law library, *etc.*).[54]

Simply put, this policy does not establish that Fennell was forced to receive a vaccination against his will. Fennell's allegations clearly show that prisoners were given a choice regarding whether to be vaccinated with the J&J vaccine or be moved to a unit with other unvaccinated and infected prisoners and losing certain privileges. Fennell does not contend, for example, that the policy called for physical restraint and injection against an inmate's will, or even for misconducts being issued for refusing to be vaccinated. The Court additionally notes that, according to the DOC's website, "[v]accination among the inmate population is

---

[54] *See* Doc. 1 ¶ 24; Doc. 34 at 4, 7; Doc. 35 at 4-5.

voluntary," and inmates are incentivized to get vaccinated and boosted by being offered financial compensation, further demonstrating that COVID-19 vaccination was not forced or mandatory in state prisons.[55] Defendants' purported action of attempting to vaccinate prisoners against the COVID-19 virus and separating vaccinated and unvaccinated inmates in no way represents "conscience-shocking" conduct. It is, in fact, an eminently reasonable course of action to protect against the spread of the virus.[56]

    Nor do Fennell's allegations about the day of his vaccination indicate a substantive due process violation. Fennell avers that he initially agreed to receive the J&J vaccine and, when Landmesser had already begun the vaccination, he changed his mind and protested that he did not want the injection. He then claims that he was informed by Dr. Saikia that his risks if he contracted COVID-19 were very serious and that he should take the J&J vaccine. Fennell repeatedly describes this incident as "being forced" to take the vaccine or an "un-willful injection."[57] However, his allegation of being given a vaccination following his initial voluntary agreement to receive it, which injection was already in process when he claims he objected to it (and which followed consultation with an attending medical

---

[55] *See* COMMW. OF PA., PA. DEP'T OF CORR., COVID-19, https://www.cor.pa.gov/Pages/COVID-19.aspx (last visited Feb. 9, 2023).

[56] *See Walker v. Sorber*, No. 21-CV-3477, 2022 WL 4586137, at *5, 7 (E.D. Pa. Sept. 29, 2022) ("Due to the necessarily close and continued contact that prisoners experience, SCI-Phoenix had every reason to attempt to prevent a large-scale outbreak by segregating vaccinated from unvaccinated prisoners[.]").

[57] *See, e.g.*, Doc. 1 ¶¶ 26, 29, 30, 33.

12

professional), simply does not indicate governmental action that could be described as "conscience shocking" or an "unjustified intrusion" into his body. Thus, Fennell cannot plausibly state a Fourteenth Amendment substantive due process claim against any Defendant.

### C. Eighth Amendment Claims

Fennell's related Section 1983 claims tumble like a house of cards when the substantive due process claims fall away. Fennell contends that multiple Defendants violated the Eighth Amendment because they failed to protect him or failed to intervene in the purported substantive due process violation. But, because there was no underlying due process violation, there was no harm or constitutional infringement against which any Defendant could intervene or protect. The alleged policy did not violate Fennell's constitutional rights, nor did the treatment Fennell received during the vaccination. In sum, Fennell cannot state a failure-to-protect or failure-to-intervene claim because there was no harm or unlawful action to protect against.

### D. Section 1983 Conspiracy

To state a claim for Section 1983 conspiracy, a plaintiff must plausibly allege: "'(1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs . . . any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his

13

person or property or deprives the plaintiff of any right or privilege of a citizen of the United States,' with the added gloss under § 1983 that 'the conspirators act under the color of state law.'"[58] Notably, to state a conspiracy claim, a plaintiff must do more than recite talismanic phrases like "conspire" and "act in concert."[59]

Fennell's Section 1983 conspiracy claim is deficient in two ways. First, he merely states, in conclusory fashion, that Defendants "agreed amongst themselves and with the other employee[]s of the [DOC] to act in concert in order to deprive [him] of his clearly established constitutional rights[.]"[60] These are the exact type of conclusory allegations that violate the pleading requirements provided in *Twombly* and *Iqbal*. Such formulaic, purely legal conclusions must be disregarded.[61]

---

[58] *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018) (alterations in original) (quoting *Barnes Found. v. Township of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001)).

[59] *See id.* at 295 (explaining that, to state a civil conspiracy claim, a plaintiff must demonstrate that defendants "somehow reached an understanding to deny [the plaintiff] his rights" (alteration in original)); *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (citing *Kalmanovitz v. G. Heileman Brewing Co.*, 595 F. Supp. 1385, 1400 (D. Del. 1984), *aff'd* 769 F.2d 152 (3d Cir. 1985) ("It is a longstanding rule in the Third Circuit that a mere general allegation ... [or] averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient [to state a claim]." (citing *Black & Yates, Inc. v. Mahogany Ass'n*, 129 F.2d 227, 231-32 (3d Cir. 1941)))); *Adams v. Corr. Emergency Response Team*, 857 F. App'x 57, 61 (3d Cir. 2021) (nonprecedential) (explaining that, to state a Section 1985 conspiracy claim, a plaintiff must sufficiently allege "facts and circumstances" that "support the elements of the conspiracy" and show agreement between defendants to deprive a plaintiff of a constitutional right); *Stankowski v. Farley*, 251 F. App'x 743, 748 (3d Cir. 2007) (nonprecedential) (finding that plaintiff's "conclusory allegation" that defendants "conspired" against him fails to state a claim for civil conspiracy).

[60] Doc. 1 ¶ 73.

[61] *Connelly*, 809 F.3d at 787 (quoting *Iqbal*, 556 U.S. at 679).

Second, and more fundamentally problematic, is that Fennell has not set forth a plausible underlying constitutional violation. Therefore, he cannot state a viable civil rights conspiracy claim, either.[62] For both reasons, Fennell's Section 1983 civil conspiracy claim must be dismissed as well.

E.   **First Amendment Access to Courts**

Fennell appears to be raising an additional, unrelated Section 1983 claim involving denial of access to the prison law library. As best the Court can ascertain, Fennell is asserting an access-to-courts claim pursuant to the First and Fourteenth Amendments. This claim fails for multiple reasons.

Under the First and Fourteenth Amendments to the United States Constitution, "prisoners retain a right of access to the courts."[63] Inmates, however, may only proceed on access-to-courts claims in two situations: "challenges (direct or collateral) to their sentences and conditions of confinement."[64] To adequately plead an access-to-courts claim that is backward-looking in nature,[65] the prisoner must allege "(1) that they suffered an 'actual injury'—that they lost a chance to

---

[62] *See Clayworth v. Luzerne County*, 513 F. App'x 134, 138 (3d Cir. 2013) (nonprecedential) ("Thus, because [plaintiff] failed to establish an underlying violation of his constitutional rights, his [civil rights] conspiracy claim also fails.") (citing *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993), *abrogated on other grounds by United Artists Theatre Cir., Inc. v. Township of Warrington*, 316 F.3d 392 (3d Cir. 2003)).

[63] *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis v. Casey*, 518 U.S. 343, 346 (1996)).

[64] *Id.* (citing *Lewis*, 518 U.S. at 354-55).

[65] There is also a category of access-to-courts claims that is forward-looking, in which plaintiffs allege that "systematic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." *Christopher v. Harbury*, 536 U.S. 403, 413 (2002).

15

pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit."[66] The underlying claim must be described well enough to demonstrate that it is "more than hope," and the complaint must set out the "lost remedy."[67]

Simple recitation of the elements of an access-to-courts claim reveals that Fennell's complaint fails at every element. First, Fennell's allegations do not involve a direct or collateral challenge to a criminal sentence or a conditions-of-confinement claim. The underlying lawsuit he references is a separate civil rights action filed in this Court asserting failure-to-protect claims against SCI Smithfield officials.[68]

Even if Fennell's underlying lawsuit were construed as a conditions-of-confinement claim, he has not alleged that he suffered a cognizable injury, *i.e.*, that he lost the chance to pursue a nonfrivolous post-conviction challenge or conditions-of-confinement claim. Fennell appears to allege that his exclusion from the law library in March and April 2022 affected his ability to "file a timely response" to several pending motions,[69] but the public record demonstrates that the

---

[66] *Monroe*, 536 F.3d at 205 (quoting *Christopher*, 536 U.S. at 415).
[67] *See Christopher*, 536 U.S. at 416-17.
[68] *See generally Fennell v. Luther*, No. 4:21-cv-01717, Doc. 47 (M.D. Pa. Aug. 5, 2022).
[69] Doc. 1 ¶ 39.

Court granted Fennell's motions for enlargement of time on multiple occasions.[70] Fennell was also able to litigate the pending motions and continue to pursue both of his cases (the instant case and number 4:21-cv-01717) following the time in question. Thus, Fennell did not lose the chance to pursue a claim or even an opportunity to respond to a motion.

Third, Fennell has not pled facts showing that he has no other remedy than a Section 1983 denial-of-access lawsuit. During the time Fennell alleges he was being kept out of the law library, no dispositive motion was considered or ruled upon. And the docket shows that his motions for enlargement of time were mostly granted. Fennell was also filing numerous documents and motions with the Court during this time, further undercutting his access-to-courts claim. Thus, because Fennell's access-to-courts claim fails at every element, this claim must be dismissed.

## IV.   LEAVE TO AMEND

Generally, "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment

---

[70] *See Fennell*, No. 4:21-cv-01717, Docs. 23, 25, 51, 55. The single time the Court denied a motion for enlargement of time was in response to Fennell's *third* motion for an extension of time to respond to a motion to revoke IFP and sever and to a motion to dismiss from a single defendant. *See id.*, Doc. 36. In that denial, the Court specifically noted, "Plaintiff has already been granted two extensions to respond to these motions, and . . . instead of using his time in the law library to respond to the motions pending in this Court[,] Plaintiff has filed motions for increased access to the law library, a motion for contempt, and a motion for a temporary restraining order or preliminary injunction[.]" *Id.*

would be inequitable or futile."[71] Here, leave to amend will be denied because amendment would be futile. Fennell's allegations do not implicate a substantive due process violation, an Eighth Amendment failure-to-protect or failure-to-intervene claim, or a civil conspiracy. Nor do they state a First and Fourteenth Amendment access-to-courts claim. Fennell's allegations are legally, rather than factually, deficient, and thus amendment would be futile.

As to Fennell's state-law negligence and medical malpractice claims,[72] Fennell asserts in his brief in opposition to Landmesser's motion to dismiss that he is not raising any state law claims.[73] He doubles down on this proposition, even while admitting he submitted certificates of merit,[74] stating, "In response to defendant's argument, Plaintiff contends that a certificate of merit is not required because he is not asserting any professional negligence claims against any of the defendants."[75] This is an odd position to take when Fennell's complaint explicitly includes two counts asserting negligence and medical malpractice, and when he attached certificates of merit to his complaint.

In any event, Fennell is the master of his complaint, and if he expressly asserts that he is not raising or pursuing state-law claims (and does not wish to

---

[71] *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).
[72] *See* Doc. 1 ¶¶ 74-79 (Counts V and VI).
[73] *See* Doc. 35 at 6 ("Plaintiff has not raised any state law claims within his complaint[.]").
[74] *See* Doc. 1-1.
[75] *Id.*

raise or pursue any state-law claims), Counts V and VI of his complaint will be considered voluntarily dismissed pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).[76]  Moreover, because the federal claims in this case are being dismissed, the Court observes that it would decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) over the state-law claims, likewise resulting in dismissal.

## V.      CONCLUSION

Based on the foregoing, the Court will grant Defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Leave to file an amended complaint will be denied because amendment would be futile.  Fennell's state-law claims are voluntarily dismissed without prejudice.  An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[76] Rule 41(a)(1)(A)(i) permits voluntary dismissal by a plaintiff without a court order by filing "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment."  FED. R. CIV. P. 41(a)(1)(A)(i).  The Court will construe Fennell's unambiguous statements in his briefing as seeking to voluntarily withdraw any state-law claim asserted in his complaint.